UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT MCKAY,

                         Plaintiff,                               Case No. 14-cv-10252

v                                              Honorable Thomas L. Ludington

WILLIAM FEDERSPIEL and
RANDY PFAU,

                         Defendants.

_____/

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Robert McKay challenges the constitutionality of a recent administrative order issued by the Saginaw County Circuit Court. The administrative order ("Electronics Ban Order") prohibits members of the public from possessing and using cell phones, cameras, and other electronic communication devices in the Saginaw County Governmental Center. McKay alleges that the Electronics Ban Order violates the First, Fifth, and Fourteenth Amendments of the United States Constitution that protect his right "to attend, observe, and *record* matters of public concern" within the Saginaw County Governmental Center. Mot. Prelim. Inj. 2, ECF No. 2 (emphasis original).

On January 20, 2014, McKay filed a motion for preliminary injunction that would enjoin Defendants and the Saginaw County Sheriff's Department from enforcing the Electronics Ban Order. McKay's motion will be denied as the Electronics Ban Order as to the *inside* of the courtrooms, because there is no First Amendment right for citizens to record courtroom proceedings.

McKay's motion will also be denied, but without prejudice, as it applies to spaces *outside* the courtrooms. The parties have not provided sufficient factual information about the architectural organization of the spaces inside the Saginaw County Governmental Center or the manner in which the spaces are shared by the judiciary and other county agencies. Nor have they addressed the law governing judicial common spaces such as hallways or the spaces used by the executive and legislative branches of county government.

**I**

Robert McKay is a Tuscola County resident who is "politically active in the elimination of administrative orders, issued by local judges, to conduct proceedings without the benefit of public recording." Mot. Prelim. Inj. 2. On August 7, 2013, the Saginaw County Board of Commissioners entertained a proposed ordinance that would ban all devices from being brought into the Saginaw County Governmental Center. Compl. ¶ 10, ECF No. 1. The Saginaw County Governmental Center houses the legislative and executive offices of Saginaw County, including the Saginaw County Board of Commissioners, County Treasurer, County Clerk, Register of Deeds, as well as judicial offices and courtrooms for the Tenth Circuit Court of Saginaw County, the Seventieth District Court of Saginaw County, the Probate Court of Saginaw County, and the Saginaw County Friend of the Court. *Id*. ¶ 9-10.

McKay appeared at the Saginaw County Board of Commissioners' meeting to voice his opposition to the proposed ordinance. *Id*. ¶ 13. McKay "argued regarding the unfairness for certain groups of people to not have to comply with the same rules as other citizens and asked the Committee to not approve the proposed ordinance." *Id.* ¶ 14. After listening to McKay and others speak, the Board of Commissioners postponed its decision on the proposed ordinance. *Id.*

¶ 17. The proposed ordinance restricting electronics throughout the entire Governmental Center was never brought back to the table for further consideration. *Id.* ¶ 18.

Although the Board of Commissioners never approved the proposed ordinance, the Chief Judges of the Saginaw County Courts issued an Electronics Ban Order[1], which prohibits many types of electronic devices in the courtrooms and surrounding areas. The Electronics Ban Order provides:

> Except with a judge's permission, possession and/or use of the following devices is prohibited in court related facilities:
>
> - audio and/or video recording and/or broadcasting devise
> - camera/photographic devices
> - electronic communication devices
>
> Electronic communication devices include any device capable of communicating information from one person to another, including cell phones, pagers, two way radios, and laptop/notebook/tablet computers.
>
> Court related facilities include the Saginaw County Circuit Court, District Court, and Probate Court (including the entire Juvenile/Family Court facility) courtrooms, court administrative offices, Friend of the Court offices, probation offices, and related common areas.

Mot. Prelim. Inj., Ex. A. The Electronics Ban Order is intended to address at least three problems: "ring tones disrupting proceedings, spectators photographing witnesses, jurors conducting on-line research, etc." Mot. Prelim. Inj., Ex. C.

A person may be exempted from the Electronic Ban Order with a judge's permission. For example, the Chief Judges have exempted attorneys—who are licensed and regulated by the State Bar of Michigan—from the Electronic Ban Order: "This significant exception recognizes

---

[1] Local Administrative Order C10-2013-08-J. The Saginaw County Circuit Courts issued the Electronics Ban Order in accordance with Michigan Court Rule 8.112, which provides: "A trial court may issue an administrative order governing only internal court management." Moreover, Michigan Court Rule 8.115 permits the chief judge to "establish a policy regarding the use of cell phones or other portable electronic communication devices within the court, except that no photographs may be taken of any jurors or witnesses, and no photographs may be taken inside any courtroom without permission of the court."

that attorneys are officers of the court, increasingly dependent on electronic devices to conduct on-line research, assist in presentations, manage schedules, gain access to office and colleagues, etc., and yet appreciate the need to maintain decorum."  Mot. Prelim. Inj., Ex. C; *see also* Mich. Ct. R. 8.109(B) ("The court may regulate the manner of audio or photographic recording so that it does not disrupt the proceeding."). In addition, it appears that some media outlets have already obtained permission to take photographs during criminal trials. *See* Mot. Prelim. Inj., Ex. D, E.

Violation of the Electronics Ban Order "may result in appropriate sanctions, including (A) being summarily barred or removed from court related facilities, and/or (B) imposition of a fine, including confiscation of any offending device, incarceration, or both for contempt of court." Mot. Prelim. Inj., Ex. A.

On December 13, 2013, Lieutenant Randy Pfau sent a memo to all Sheriff's Department personnel alerting them of the recently instituted Electronics Ban Order. Ex. B. Pfau explains that if prohibited electronics "are brought in they will be treated as any other restricted item and people will be able to take them back to their cars. . . . Persons not wishing to comply with this order will be barred from the courthouse and those in violation inside the building may have their electronic device confiscated." Mot. Prelim. Inj., Ex. B.

**II**

McKay contends that the "plain language and/or effect of Electronics Ban Order prohibits Plaintiff and all others from taking photographs and/or video recordings of public officials in the performance of their public duties at the Saginaw County Governmental Center." Compl. ¶ 26. McKay asserts that he "does not wish to be subject to contempt . . . for exercising his constitutional rights" to film and record judicial proceedings. Mot. Prelim. Inj. 4. He has

therefore moved for a preliminary injunction enjoining the Sheriff's Department from enforcing the Electronics Ban Order.

Before the Court may address the merits of McKay's motion, however, the Court must first address several jurisdictional issues. Defendants contend (1) that McKay lacks standing, (2) that the issue is not yet ripe for review, (3) that McKay failed to join indispensible parties, and (4) that McKay failed to serve notice on the Attorney General of Michigan.

## A

Standing is the determination of whether a specific person is the proper party to bring a matter to the court for adjudication: "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

The Supreme Court has announced three constitutional standing requirements. First, the plaintiff must allege that he or she has suffered or imminently will suffer an injury. Second, the plaintiff must allege that the injury is fairly traceable to the defendant's conduct. Third, the plaintiff must allege that a favorable federal court decision is likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

The elements of Article III standing are not simply pleading requirements. *Id.* at 561. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id*.

McKay is seeking a declaratory judgment that the Electronics Bans Order violates his constitutional rights. Declaratory judgments are typically sought before a completed "injury-in-fact" has occurred. Therefore, when a plaintiff seeks declaratory relief, the plaintiff "must show

actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). Pre-enforcement review is usually granted when an administrative order "imposes costly, self-executing compliance burdens or it chills protected First Amendment activity." *Id.* (quoting *Minnesota Citizens Concerned for Life v. Federal Election Comm'n*, 113 F.3d 129, 132 (8th Cir. 1997)).

Here, Defendants argue that McKay lacks standing because he has not alleged that the Electronics Ban Order has caused him any injury. Requiring an injury is key to assuring that there is an actual dispute between adverse litigants and that a court is not being asked for an advisory opinion. As the Supreme Court explained: "The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983). Indeed, "[a]llegations of possible future injury do not satisfy the requirement of Article III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

McKay claims that he has alleged an injury-in-fact because he is prevented from "exercise[ing] a right to record trial activities, the police and sheriff deputies inside and outside the courtroom in the performance of their official duties, the judge in the performance of his or her duties, and other activities of public interest occurring at the Saginaw County Governmental Center." Compl. ¶ 34. McKay claims that the fear of arrest and prosecution is "chilling" his First Amendment right to record governmental officials both inside and outside the courtrooms. McKay points to "[s]igns around the courthouse . . . clearly announce this imminent threat," by

stating that "Violation [of the Electronics Ban Order] May Result in Contempt Sanctions." Mot. Prelim. Inj., Ex. H.

**i**

McKay has not identified any legally cognizable harm with regard to his assertion that he will suffer an injury by being prohibited from recording judicial proceedings *inside* the courtroom. He does not explain how a prohibition on creating his own private recording of judicial proceedings harms him. McKay may attend court proceedings, take notes for any purpose, and then report on the proceedings to the public. Moreover, he can request permission from the presiding judge to make a recording of the proceedings. *See* Mot. Prelim. Inj. Ex. A at ¶ 2. Even if the presiding judge denies McKay's request, McKay can request an official transcript from the court. *See* Mich. Ct. R. 8.108(F) ("On order of the trial court, the court reporter or recorder shall make and file in the clerk's office a transcript of his or her records . . . the transcript is part of the records in  the case.").

Plus, as McKay points out in his brief, the media has been granted permission in at least a couple instances to record and photograph courtroom proceedings. Indeed, Michigan Supreme Court Administrative Order No. 1989-1 explicitly requires Michigan trial court judges to allow media coverage in the courtroom, subject only to a judge's discretion to protect the integrity and fairness of the proceedings: "Film or electronic media coverage shall be allowed upon request in all court proceedings."

McKay has not been prohibited from attending judicial proceedings; he has only been prohibited from creating his own personal record of the judicial proceedings. Nonetheless, he appears to claim that a personal recording is necessary to create "a shared basis of knowledge for public discussion and critique." Mot. Prelim. Inj. 10. But McKay has not explained how his goal

of providing "a shared basis of knowledge for public discussion" will be impeded by his inability to create his own personal, duplicate record of events. McKay will be able to personally observe judicial proceedings. Alternatively, McKay or another member of the public could access the court reporter's official transcripts, which are, of necessity, presumed to be correct. *Williams v. Romanowski*, 2008 WL 6875005 *42 (E.D.Mich. Jan. 29, 2008).

Furthermore, although the public has a First Amendment right to attend and observe courtrooms, the Supreme Court has explicitly disavowed that the media—and by extension, the public—has a First Amendment right to use electronic equipment in the courtroom. The Court first analyzed the constitutional implications of electronic media in the courtroom in *Estes v. Texas*, 381 U.S. 532 (1965). In *Estes*, the defendant claimed that his Fourteenth Amendment right to due process had been violated by the televising and broadcasting of his trial. The Court agreed, holding that the atmosphere created by the media in the courtroom infringed on the defendant's right to a fair trial. *Id*. The Court directly addressed the question of whether the First Amendment extends a right to the news media to televise from the courtroom:

> While the state and federal courts have differed over what spectators may be excluded from a criminal trial, (citation omitted), the amici curie brief of the National Association of Broadcasters and the Radio Television News Directors Associations, says, as indeed it must, that "neither of these two [First and Sixth] amendments speak of an unlimited right of access on the part of the broadcast media."

*Id*. at 539. In his concurrence, Justice Harlan reiterated this sentiment:

> No constitutional provision guarantees the right to televise trials. . . . A public trial implies only that the court must be open to those who wish to come, sit in the available seats, conduct themselves with decorum, and observe the trial process. It does not give anyone a concomitant right to photograph, record, broadcast, or otherwise transmit the trial proceedings to those members of the public not present . . . .

*Id.* at 588. Justice Harlan emphasized: "[w]ithin the courthouse the only relevant constitutional consideration is that the accused be accorded a fair trial." *Id*. at 598.

The Court revisited *Estes* in *Chandler v. Florida*, 449 U.S. 560 (1981). In *Chandler*, the Court held that televising a trial against the wishes of two criminal defendants was not a violation of their constitutional rights. *Chandler*, 449 U.S. at 582-83. The Court clarified that *Estes* does not require a per se ban on electronic media in the courtroom. *Id* at 574. However, the Court also clarified that the media does not have a constitutional right to have electronic equipment in the courtroom:

> While we have concluded that the due process clause does not prohibit electronic media coverage of judicial proceedings per se, by the same token we reject the argument of the [media] that the first and sixth amendments to the United States Constitution mandate entry of electronic media into judicial proceedings.

*Id*. at 569. Thus, *Chandler* holds "only that televising criminal trials is constitutionally permissible. It does not hold that it is constitutionally required." 861 Fed. Practice and Procedure.

Since *Chandler*, courts have consistently and explicitly rejected the notion that the federal constitution gives electronic media the right to be in the courtroom. *See also Combined Communications Corp. v. Finesilver*, 672 F.2d 818 (10th Cir. 1982); *United States v. Yonkers Bd. of Educ.*, 587 F. Supp. 53-54 (S.D.N.Y. 1984) ("the First Amendment right of access is limited to physical presence at trials."); *United States v. Kerley*, 753 F.2d 617, 621 (7th Cir. 1985) (holding that the public has no right to videotape trial even when the defendant wishes it to be videotaped); *Westmoreland v. Columbia Broadcasting System, Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) ("There is a long leap, however, between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised.")

Moreover, the First Amendment does not require states to accommodate every potential method of recording its judicial proceedings, particularly where the public is granted alternative means of compiling a comprehensive record. *See Rice v. Kempker*, 374 F.3d 675, 680 (8th Cir. 2004); *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999); *Combined Communications Corp. v. Finesilver*, 672 F.2d 818, 821 (10th Cir. 1982) (upholding ban on television coverage of court-ordered negotiations when members of the press were permitted to attend the meetings and take notes); *Garrett v. Estelle*, 556 F.2d 1274, 1279 (5th Cir. 1977) (upholding prison's prohibition on filming execution because there were other methods of informing the public of the execution). Indeed, in dicta, Justice Harlan emphasized that "[t]he presence of the press at trials may have a distorting effect, but it is not caused by their pencils and note books. If it were, I would not hesitate to say that such physical paraphernalia should be barred." *Estes,* 381 U.S. at 590.

The Electronics Ban Order does not prevent McKay from disseminating to the public any information he learns from attending courtroom proceedings. The Saginaw County Court has not denied McKay's right to attend and observe courtroom proceedings; it has only prohibited the use of electronic equipment inside the courtroom. The Supreme Court has explicitly disavowed that observers have a First Amendment right to use electronic equipment in the courtroom. *See Estes*, 381 U.S. at 539; *Chandler*, 449 U.S. at 569.

Accordingly, because McKay does not have a First Amendment right to record courtroom proceedings, and because he has not sufficiently alleged an injury, McKay does not have standing to challenge the Electronics Ban Order as it applies to courtroom proceedings.

**ii**

In contrast, McKay does have standing to challenge the Electronics Ban Order as it applies to areas outside the courtroom. Although McKay merely claims that he "is afraid that he will be subject" to sanctions for recording events outside the courtroom, this allegation is enough to confer standing. The Supreme Court has lessened the burdens of proving standing when a plaintiff challenges a statute as violative of the First Amendment.  This is because the harm alleged in First Amendment cases is the "chilling effect" on the constitutionally protected right to free expression, which is "of transcendent value to all society." *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965). Accordingly, parties not yet affected by the actual enforcement of an administrative order—such as McKay—are allowed to challenge actions under the First Amendment to ensure that the administrative order does not act to "chill" the constitutionally protected right to free speech. *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995). Accordingly, McKay has alleged a sufficient injury-in-fact to confer standing.

**B**

Closely related to standing's injury-in-fact requirement is the ripeness doctrine, another justiciability requirement. The ripeness doctrine seeks to separate matters that are appropriate for review from those that are premature for review because the injury is speculative and may never occur. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). Ripeness requires that the "injury in fact be certainly impending," and thus, is a question of timing. *Regional Rail Reorganization Cases*, 419 U.S. 102, 139 (1974). "A case is ripe for pre-enforcement review . . . only if the probability of the future event occurring is substantial and of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Magaw*, 132 F.3d at 284 (quoting *Golden v. Zwickler*, 394 U.S. at 108)).

Determining whether an issue is ripe for review requires a court to consider several factors. First, a court must address the hardship to the parties if judicial relief is denied at the pre-enforcement stage in the proceedings. *United Steelworkers, Local 2116 v. Cyclops corp*., 860 F.2d 189, 195 (6th Cir. 1988). Second, the court must examine the "likelihood that the harm alleged by plaintiffs will ever come to pass." *Id*. at 194. And finally, the court must consider whether the case is fit for judicial resolution at the pre-enforcement stage, which requires a determination of whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims. *Id*. at 195.

The ripeness inquiry to pre-enforcement challenges in First Amendment cases usually "focuses on how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute." *Magaw*, 132 F.3d 285. In First Amendment cases, courts have generally found a threat of prosecution to be imminent and credible when the plaintiff's intended behavior is covered by the administrative order and the law is generally enforced. *See e.g., Seegars v. Gonzales*, 396 F.3d 1248, 1252 (D.C. Cir. 2005); *Mangual v. Roger—Sabat*, 317 F.3d 45, 57 (1st Cir. 2003); *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1360 (10th Cir. 1981).

Here, McKay has alleged that his behavior is covered by the Electronics Order Ban, which is generally enforced. McKay states that he "seeks to exercise a right to record trial activities, the police and sheriff deputies inside and outside the courtroom in the performance of their official duties, the judge in the performance of his or her duties, and other activities of public interest . . . ." Mot. Prelim. Inj. 12. Because the Electronics Ban Order prohibits any electronic recording devices, the Electronics Ban Order will necessarily prevent McKay from recording these events that take place outside the courtroom. Although McKay has not alleged

that he—or any other person—has in fact been prevented from bringing in a recording device, he has provided a memo from Defendant Pfau, which implies that the electronics Ban Order will be enforced. Accordingly, McKay has alleged an imminent and credible threat of prosecution, which makes the issue sufficiently ripe for review.

## C

McKay has named Saginaw County Sheriff Federspeil and Lieutenant Sheriff Pfau as Defendants. Both Sheriff Federspeil and Lieutenant Sheriff Pfau are named in their official and individual capacities. "Official-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1978). "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Accordingly, for the purposes of the official capacity claims, Saginaw County is the true defendant at issue in this case.

Defendants claim—without any citations to legal authority—that McKay has failed to name the proper defendants as parties. Defendants contend that the State Courts or the Saginaw Circuit Court Judges must be named as defendants because McKay is challenging the constitutionality of a state court administrative order.[2] Therefore, they contend, failure to join either the State Courts or Judges necessitates dismissal because they are indispensable parties.

Courts use a three-part test to determine whether a party is indispensable under Federal Rule of Civil Procedure 19(b). First, the Court must determine whether a nonparty should be joined under Rule 19(a). Generally, courts use the term "necessary" to describe those "[p]ersons to [b]e joined if feasible," under Rule 19(a). If the nonparty is a necessary party under Rule

---

[2] Of course, bringing suit against a state government would necessarily implicate Eleventh Amendment sovereign immunity issues. However, neither party addresses these issues.

19(a), then the second question for the Court to determine is whether it is feasible to order that the nonparty be joined. Finally, if joinder is not feasible, the Court must determine whether the case can proceed without the nonparty, or whether the nonparty is an "indispensable party" such that the action must be dismissed.  The moving party has the burden of persuasion in arguing for dismissal. *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999).

Thus, the first step is for the Court to determine whether the State of Michigan or one of its agents, such as the Circuit Court and its judges, is a necessary party under Rule 19(a).  A party is necessary if "complete relief" cannot be accorded among the existing parties, or if the absent party has a "legally protected interest" in the subject of the suit. *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992). Here, McKay challenges the constitutionality of a Court administrative rule, and thus the State of Michigan does not have a "legally protected interest"—such as contractual or property rights—at issue in the litigation.

The requirement under Rule 19(a)(1) that complete relief be available does not mean that every type of relief sought must be available, only that meaningful relief be available. 3A J. Moore, J. Lucas & G. Grotheer, Jr., Moore's Federal Practice ¶ 19.07–1[1] (2d ed. 1989). In this case, meaningful relief for McKay would consist of a declaratory judgment that the Electronics Ban Order is unconstitutional and an injunction prohibiting its enforcement. This type of relief could be granted without impairing the Saginaw Circuit Court's ability to protect its interest under Rule 19(a)(2)(i). As explained in the letter to the Saginaw Bar Association, the Saginaw Circuit Court instituted the ban to prevent disruptions, among other reasons. Even if the Electronics Ban Order is unconstitutional, the individual judges would still be able to exercise their contempt power to prohibit the use of recording devices in the courtroom.  Accordingly, complete relief is available to McKay without joining the State Courts.

- 14 -

Finally, with respect to the declaratory judgment and the prohibitory injunction, Defendants would not be subject to multiple or inconsistent obligations as a result of any interests claimed by the absent parties. Fed. R. Civ. P. 19(a)(2)(ii). When a federal court declares a state statute or administrative order unconstitutional, state judges are presumed to be willing to uphold the ruling. Therefore, neither the State Courts nor the State Judges are "necessary" parties under Rule 19(a),

### D

Federal Rule of Civil Procedure 5.1 requires any party "drawing into question the constitutionality of a federal or state statute must promptly . . . serve the notice and paper . . . on the state attorney general if a state statute is questioned." Thereafter, the Michigan Attorney General is afforded sixty days to intervene in the action to defend the constitutionality of the challenged statute. 5.1(c). "Th[is] certification requirement protects the public interest by ensuring that the Executive Branch can make its views on the constitutionality of . . . statutes heard." *Okla. ex rel. Edmondson v. Pope*, 516 F.3d 1214, 1216 (10th Cir. 2008).

As an initial matter, the Court must first determine if McKay is "drawing into question the constitutionality of a federal or state statute." McKay is challenging an administrative order issued by Saginaw County Courts. The Electronic Ban Order provides that "[t]his administrative order is issued in accordance with MCR 8.112." Mot. Prelim. Inj., Ex. A. Michigan Court Rule 8.112, in turn, provides that "[a] trial court may issue an administrative order governing only internal court management."

The Michigan Court rules "have the force of law in Michigan." *United States v. Driscoll*, 970 F.2d 1472, 1478 (6th Cir. 1992) (overruled on other grounds); *People v. Rodgers*, 446 N.W.2d 845, 847 (Mich. Ct. App. 1989) ("We do not believe that the Legislature could validly

- 15 -

enact a statute in derogation of the Michigan Supreme Court's rule-making power to establish judicial procedure."). Although Michigan Court Rules have the force of law in Michigan, it is not altogether clear that they are equivalent to "state statutes". Indeed, an independent review of the caselaw by the Court did not reveal any legal authority for the proposition that a local court rule was the equivalent of a state statute for purposes of Rule 5.1.

Nevertheless, even assuming that the Electronics Ban Order is a "state statute" for purposes of Rule 5.1, the failure to provide notice does not deprive the Court of jurisdiction to hear the case. *See Tonya K. v. Bd. of Educ.*, 847 F.2d 1243, 1247 (7th Cir. 1988); *Ga Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 805, 810 n. 3 (11th Cir. 1988). And Federal Rule 5.1 does not specify when certification must be made to the Attorney General, other than "before a final judgment holding the statute unconstitutional." Fed. R. Civ. P. 5.1(c). Thus, the Court "may reject a constitutional challenge to a statute at any time." Fed. R. Civ. P. 5.1(c) advisory committee's note (2006); *see also* 1 James Wm. Moore, et al., Moore's Federal Practice ¶ 5.1.06[2] (3d ed. 2013) (explaining that a court may enter "final judgment or an order rejecting the constitutional challenge to the statute" without awaiting the Attorney General's intervention determination under Federal Rule 5.1). Insofar as the Court rejects Plaintiffs' First Amendment challenge for the reasons that follow, the Court will certify a copy of this Opinion and Order to the Attorney General, thereby satisfying the notice requirements of 28 U.S.C. § 2403(a) and Federal Rule 5.1. Fed. R. Civ. P. 5.1(b), (c); *see also Ga. Ass'n*, 855 F.2d at 810 n. 3; *Buchanan Cnty. v. Blankenship*, 545 F. Supp. 2d 553, 555 n. 3 (W.D. Va. 2008); *Rhinebarger v. Orr*, 657 F. Supp. 1113, 1115 n. 1 (S.D. Ind. 1987). The Court will entertain a motion for reconsideration by the Michigan Attorney General if it determines that intervention is necessary.

## III

Having addressed the jurisdictional issues, the Court now turns to the merits of McKay's motion for preliminary injunction. Federal district courts balance the following factors in addressing motions for a preliminary injunction: "(1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). In a case implicating the First Amendment, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits. This is so because, as in this case, the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the [rule or restriction]. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007).

Both McKay and Defendant frame McKay's alleged right to record as raising a constitutional issue of freedom of expression.  Reply 11-12 ("The First Amendment enshrines this right to record as a medium of expression commonly used for the preservation and communication of information and ideas . . . ."). The Sixth Circuit has clarified, however, that a member of the public's right to record involves the First Amendment right to access information, not freedom of expression. *See S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 559 (6th Cir. 2007). In *S.H.A.R.K.*, the plaintiffs placed videocameras in state parks to record the deer-culling activity. When the state removed those cameras, the plaintiffs argued that their First Amendment rights had been violated. The Sixth Circuit held that "[t]he case before us is about access to information as opposed to the right to expression."[3] *Id.* at 559.

---

[3] Moreover, when, as here, the First Amendment right at issue is the right to access, the case does not involve prior restraint. *See Resnick v. Patton*, 258 F. App'x 789, 792 (6th Cir. 2007) ("This is not a prior restraint case. NBC is

- 17 -

The parties have not provided enough factual information for the Court to address whether preliminary injunction is warranted. As explained below, the right to record proceedings that take place outside the courtroom is circumscribed by concerns for the integrity of judicial proceedings; these concerns are different from the concerns raised by recording inside courtrooms. Whether the restrictions on the right to record are permissible is a fact-intensive inquiry, which the parties have not yet addressed. Accordingly, McKay's motion for preliminary injunction will be denied, but without prejudice to his ability to renew a request for relief with the necessary factual and legal support.

**A**

Although there is no First Amendment right to tape and record courtroom proceedings, some courts have held that the media may have the right to record events taking place outside the courtroom and any restrictions on that right must be reasonable. "A State may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence." *Cox v. Louisiana*, 379 U.S. 559, 562 (1965). "Once the qualified First Amendment right of access attaches, it can 'be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *United States v. Miami University*, 294 F.3d 797, 821 (6th Cir. 2002).

In *Dorfman v. Meiszner*, the Seventh Circuit addressed a local court rule that banned the use of electronic media inside a federal building and adjacent exterior areas. Specifically, the court rule banned the "taking of photographs in the courtroom or its environs," where the environs included "the entire 25th, 24th, 23rd, 21st, 20th, 19th, 18th, 16th, 15th, 14th, 2nd and ground floors, including the plaza and sidewalks surrounding the Courthouse." *Id*. at 560.

---

not restrained by the district court's order from publishing or broadcasting documents or information in its possession. Rather, the case concerns the right of the public and representatives of 'the media' to have access to documents filed in a district court."(quoting *Application of NBC, Inc.*, 828 F.2d 340, 343)).

Despite the broad prohibition on recording in the federal building, the courtrooms were located only on the 19th floor and above. The remaining floors housed several federal agencies, including the Treasury Department, congressional offices, the Commission on Civil Rights, the Secretary of the Air Force, the Commerce Department, a health clinic, the Equal Employment Opportunity Commission, and the office of a United States senator. *Id.* at n. 2.

The *Dorfman* Court concluded that, although "the district court may, by rule, exclude photographing and broadcasting from those areas of the courthouse which would lead to disruption or distraction of judicial proceedings," the local court rule nevertheless "goes beyond the scope permitted by the First Amendment." The court first clarified that

> the district court was acting within its discretion in prohibiting photographing and broadcasting inside as well as in the areas adjacent to courtrooms. Moreover, the extension of the prohibition to the entire floor on which a courtroom is located, as well as the elevators on the first floor, is also permissible as a measure reasonably calculated to promote the integrity of the court's proceedings.

*Id* at 562. In addition, floors that housed the United States Marshal, the offices of the United States Attorney, and the grand jury room "may be treated in the same manner as those floors on which are located the courtrooms of the district court." *Id.* n. 4 The ban was allowable for these areas because "the law not only allows but compels the courts to insure that judicial proceedings are conducted in an orderly, solemn environment free from the interferences which so often accompany modern news coverage of the events." *Id.* at 561.

In contrast, because the prohibition extended to "floors of the federal building where there are no courtrooms, to the large center lobby on the first floor, and to the plaza and outside areas surrounding the building," the ban was impermissibly broad. *Id.* at 562. Given the architecture of the federal building—and the fact that the windowless courtrooms were located 19 floors above the lobby and outside areas—no foreseeable commotion in the lobby could

- 19 -

disturb the courtroom proceedings. Moreover, the ban also applied to floors where there were no courtrooms. Accordingly, because the ban covered areas that offered no "immediate threat to the judicial proceedings," part of the ban violated the First Amendment rights of the press. *Id*. at 563. Thus, unless the facts indicate that threats to the judicial process are sufficiently immediate, then a court order banning the use of electronic media in areas outside the courtroom may be unreasonable.

**B**

Here, there is insufficient information to decide whether the Electronics Ban Order is impermissibly broad. Neither party has provided architectural or design information about the Saginaw County Governmental Center, which is necessary to determine whether the "threat" to judicial proceedings is sufficiently immediate. For example, the Electronics Ban Order purports to prohibit recording devices on the 4th and 3rd floors in their entirety. As *Dorfman* explained, this complete ban on the 4th and 3rd floors may be permissible if only courtrooms and court facilities are located on those floors. However, if there are legislative offices on that floor, the Electronics Ban Order may not be sufficiently narrowly tailored because it will prevent the public from recording legislative activities.

Moreover, the parties do not explain how the Electronics Ban Order will be or has been enforced. Do the Sheriff's deputies enforce the ban at the entrance to the Saginaw County Governmental Center? Or is it only enforced once a particular member of the public approaches a courtroom? Thus, these and other factual concerns preclude the Court from granting McKay's motion for preliminary injunction regarding recording devices outside the courtrooms. *See Cincinnati Bengals, Inc. v. Bergey*, 453 F. Supp. 129, 145 (S.D. Ohio 1974) ("[W]here there are

novel or complex issues of law or fact that have not been resolved a preliminary injunction should be denied.").

In addition to ignoring these factual issues, the parties have not addressed the law governing the public's right to record county legislative and executive activities. The Saginaw County Governmental Center is a mixed-use building—it houses judicial, legislative, and executive offices. Focusing exclusively on judicial proceedings, the parties have left the question of whether there is a First Amendment right to record legislative proceedings unaddressed, and, reciprocally, whether the government agencies have the legal authority to regulate the recording of those activities. Simply stated, there are too many unaddressed issues of law and fact for the Court to grant McKay's motion for a preliminary injunction.

## IV

Accordingly, it is **ORDERED** that McKay's motion for preliminary injunction (ECF No. 2) is **DENIED** to the extent it seeks to prevent enforcement of the Electronics Ban Order inside courtrooms because McKay does not have standing to assert that he has a First Amendment right to record courtroom proceedings.

It is further **ORDERED** that McKay's motion for preliminary injunction (ECF No. 2) is **DENIED WITHOUT PREJUDICE** to the extent it seeks to prevent enforcement of the Electronics Ban Order outside the courtrooms because the parties have not provided the Court with sufficient facts to make an informed ruling on the motion.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: April 10, 2014

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 10, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS