UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT W. MCKAY,

                        Plaintiff,                            Case No. 14-cv-10252

v                                                    Honorable Thomas L. Ludington

WILLIAM L. FEDERSPIEL, and
RANDY F. PFAU,

                        Defendants.

_____/

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Robert McKay challenges the constitutionality of an administrative order issued by the Saginaw County Circuit Court. The administrative order (the "Electronics Ban Order") prohibits members of the public from possessing and using cell phones, cameras, and other electronic communication devices in certain areas of the Saginaw County Governmental Center. McKay alleges that the Electronics Ban Order violates the First, Fifth, and Fourteenth Amendments of the United States Constitution that protect his right "to attend, observe, and *record* matters of public concern" within the Saginaw County Governmental Center. Compl. ¶ 1, ECF No. 1 (emphasis original).

McKay filed a motion for preliminary injunction on January 20, 2014, seeking to enjoin the Electronics Ban Order from taking effect. Mot. Preliminary Injunc. 2. This Court denied the injunction because (1) McKay did not have standing to challenge the Electronics Ban Order as applied inside the courtrooms, and (2) the parties had provided insufficient factual information to determine whether the Electronics Ban Order was unconstitutional as applied to the common areas outside the courtrooms. Order 21, ECF No. 30.

On August 15, 2014, McKay filed a motion for summary judgment on Count V of the Complaint, which alleges that the Electronics Ban Order gives government officials "unbridled discretion" in choosing who may photograph and record events inside the Saginaw County Government Center.  Pl.'s Mot. Summ. J. 1, ECF No. 35.  Defendants also filed a motion for summary judgment, seeking dismissal of all of McKay's First Amendment claims.[1]  Defs.' Mot. Summ. J. 35, ECF No. 44.  Because the Electronics Ban Order does not infringe on McKay's First Amendment rights, his motion for summary judgment will be denied and Defendants' motion for summary judgment will be granted.

## I

Robert McKay is a Tuscola County resident who is "politically active in the elimination of administrative orders, issued by local judges, to conduct proceedings without the benefit of public recording."  Pl.'s Mot. Summ. J. 2.  On August 7, 2013, the Saginaw County Board of Commissioners entertained a proposed ordinance that would ban devices from being brought into the Saginaw County Governmental Center.  *Id.* at 3.  The Saginaw County Governmental Center houses the legislative and executive offices of Saginaw County, including the Saginaw County Board of Commissioners, County Treasurer, County Clerk, Register of Deeds, as well as judicial offices and courtrooms for the Tenth Circuit Court of Saginaw County, the Seventieth District Court of Saginaw County, the Probate Court of Saginaw County, and the Saginaw County Friend of the Court.  *Id.*

McKay appeared at the Saginaw County Board of Commissioners' meeting to voice his opposition to the proposed ordinance.  *Id.*  McKay "argued regarding the unfairness for certain groups of people to not have to comply with the same rules as other citizens and asked the

---

[1] Defendants' motion for summary judgment does not, however, seek summary judgment on McKay's Fifth and Fourteenth Amendment claims.

Committee to not approve the proposed ordinance." *Id.* at 3-4. After listening to McKay and other citizens speak, the Board of Commissioners postponed its decision on the proposed ordinance. *Id.* at 4. The proposed ordinance restricting electronics throughout the entire Governmental Center was never brought back to the table for further consideration. *Id.*

When the Board of Commissioners did not approve the proposed ordinance, the Chief Judges of the Saginaw County Courts issued an Electronics Ban Order, which prohibits many types of electronic devices in the courtrooms and surrounding areas. Pl.'s Mot. Summ. J. Ex. A. The Electronics Ban Order provides:

> Except with a judge's permission, possession and/or use of the following devices is prohibited in court related facilities:
>
> - audio and/or video recording and/or broadcasting device
> - camera/photographic devices
> - electronic communication devices
>
> Electronic communication devices include any device capable of communicating information from one person to another, including cell phones, pagers, two way radios, and laptop/notebook/tablet computers.
>
> Court related facilities include the Saginaw County Circuit Court, District Court, and Probate Court (including the entire Juvenile/Family Court facility) courtrooms, court administrative offices, Friend of the Court offices, probation offices, and related common areas.

*Id.* The Electronics Ban Order is intended to address at least three problems: "ring tones disrupting proceedings, spectators photographing witnesses, jurors conducting on-line research, etc." Mot. Prelim. Inj., Ex. C, ECF No. 2.

A person may be exempted from the Electronic Ban Order with a judge's permission. For example, the Chief Judges have exempted attorneys—who are licensed and regulated by the State Bar of Michigan—from the Electronic Ban Order: "This significant exception recognizes that attorneys are officers of the court, increasingly dependent on electronic devices to conduct on-line research, assist in presentations, manage schedules, gain access to office and colleagues,

etc., and yet appreciate the need to maintain decorum."  Mot. Prelim. Inj., Ex. C; *see also* Mich. Ct. R. 8.109(B) ("The court may regulate the manner of audio or photographic recording so that it does not disrupt the proceeding.").  In addition, it appears that some media outlets have already obtained permission to take photographs during criminal trials.  *See* Mot. Prelim. Inj., Ex. D, E. Violation of the Electronics Ban Order "may result in appropriate sanctions, including (A) being summarily barred or removed from court related facilities, and/or (B) imposition of a fine, including confiscation of any offending device, incarceration, or both for contempt of court." Pl.'s Mot. Summ. J., Ex. A.

On December 13, 2013, Lieutenant Randy Pfau sent a memo to all Sheriff's Department personnel alerting them of the recently instituted Electronics Ban Order.  Pl.'s Mot. Summ. J., Ex. B.  Pfau explained that if prohibited electronics "are brought in they will be treated as any other restricted item and people will be able to take them back to their cars. . . . Persons not wishing to comply with this order will be barred from the courthouse and those in violation inside the building may have their electronic device confiscated."  *Id*.

## II

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (citation omitted).  The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

### III

Before addressing the merits of the motions, the question of whether McKay has standing to challenge the Electronics Ban Order must first be addressed. In its April 10, 2014 Order denying a preliminary injunction, this Court concluded that McKay lacked standing to challenge the Electronics Ban as applied inside the Saginaw County courtrooms. *See* Order, ECF No. 30.

The Court first noted that McKay had not identified any legally cognizable harm with regard to his assertion that he will suffer an injury by being prohibited from recording judicial proceedings *inside* the courtroom:

> He does not explain how a prohibition on creating his own private recording of judicial proceedings harms him. McKay may attend court proceedings, take notes for any purpose, and then report on the proceedings to the public. Moreover, he can request permission from the presiding judge to make a recording of the proceedings. Even if the presiding judge denies McKay's request, McKay can request an official transcript from the court. *See* Mich. Ct. R. 8.108(F) ("On order of the trial court, the court reporter or recorder shall make and file in the clerk's office a transcript of his or her records . . . the transcript is part of the records in the case.").

Order 7.

Moreover, the Court noted that there is no First Amendment right to use electronic devices to record events inside a courtroom:

> The Electronics Ban Order does not prevent McKay from disseminating to the public any information he learns from attending courtroom proceedings. The Saginaw County Court has not denied McKay's right to attend and observe courtroom proceedings; it has only prohibited the use of electronic equipment inside the courtroom. The Supreme Court has explicitly disavowed that observers have a First Amendment right to use electronic equipment in the courtroom. *See Estes*, 381 U.S. at 539; *Chandler*, 449 U.S. at 569.

*Id*. at 10.[2]

On summary judgment, McKay does not address the question of his standing to challenge the Electronics Ban Order as applied inside the courtroom.  He does not assert that he has suffered an actual injury by being prohibited from recording judicial proceedings *inside* the courtroom.  Instead, he proceeds directly to his arguments under the First Amendment.  But McKay's First Amendment arguments cannot be considered on the merits unless he has standing to present them; constitutional standing is a jurisdictional requirement.  *See Tendercare (Michigan), Inc. v. Dana Corp*., 2002 WL 31545992, at *2 (E.D. Mich. Oct. 18, 2002) ("[T]his Court must address the standing issue first because standing is necessary to confer this Court with jurisdiction.") (citing *Ward v. Alternative Health Delivery Sys., Inc.*, 61 F.3d 624 (6th Cir. 2001)).

Nothing in McKay's papers or in the record indicates that McKay has standing, and therefore this Court is without subject matter jurisdiction to hear his claims.  Defendants' motion for summary judgment will be granted on McKay's claim that the Electronics Ban Order as applied in the courtroom violates the First Amendment, and that claim will be dismissed without prejudice.  *See Hyman v. City of Louisville*, 53 F. App'x 740, 744 (6th Cir. 2002) (directing district court to dismiss plaintiff's claim without prejudice because plaintiff lacked standing to assert the claim).

---

[2] Even though this Court concluded that McKay lacked standing to assert this claim in its Order Denying a Preliminary Injunction, Defendants did not move to dismiss any portion of his complaint.  Instead, they waited until the summary judgment stage to argue that McKay lacked standing.  Dismissal for lack of standing is most appropriately brought, however, pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) ("If Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction.").

**IV**

Alternatively, even if McKay had standing to challenge the Electronics Ban Order as applied inside the Saginaw County Courtrooms, he still would not prevail on his motion for summary judgment.

**A**

First, the applicable framework for analyzing McKay's alleged right to record events occurring inside the Saginaw County Courthouse must be determined. There are a variety to choose from, and the appropriate analysis depends on the specific First Amendment right at issue.

It is unclear which analysis McKay is relying on. He cites a multitude of cases that all apply different standards, but he does not address the differences and distinctions between each one. For example, McKay relies in part on *Carey v. Wolnitzek*, 614 F.3d 189, 200 (6th Cir. 2010), for his assertion that the Electronics Ban Order must survive strict scrutiny analysis. *Carey* involved a content-based restriction on expressive activity: the Sixth Circuit analyzed whether a Kentucky Supreme Court canon prohibiting certain statements during judicial campaigns violated the First Amendment. *Id*. at 193-94 (stating that "[c]ontent-based restrictions on speech generally face strict scrutiny"). But McKay also cites to *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578 (1980), which analyzes the public's First Amendment right to access judicial proceedings. Pl.'s Mot. Summ. J. 7.[3]

Instead of distinguishing between the two analytical frameworks, McKay blends them together into a hybrid analysis that ultimately—according to McKay—requires the Electronic

---

[3] To further complicate matters, McKay also contends that neither line of analysis is applicable: McKay asserts that "Plaintiff's suit is not challenging access," Pl.'s Resp. 14, and that "Plaintiff agrees that a person does not have the First Amendment right to express themselves . . . ." *Id*.

Ban Order to survive strict scrutiny. It is unclear how he reaches this result in light of the precedent he relies on.

McKay's complaint leads to the conclusion that his expressed concern falls more accurately into an "access to information" case than a "freedom of expression" case. "Although access cases are rooted in First Amendment principles, they have developed along distinctly different lines than have freedom of expression cases." *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 559 (6th Cir. 2007) (collecting cases); *see also D'Amario*, 639 F. Supp. at 1543 n.4 (recognizing that access cases require a different analytical approach than do expression cases).

But even within right of access jurisprudence, there are distinct frameworks for analyzing certain types of access claims. For instance, the Supreme Court has provided a framework for analyzing access cases addressing the issue of access to judicial proceedings. *See United States v. Miami University*, 294 F.3d 797, 820 (6th Cir. 2002). Under this analysis, "a qualified right of access attaches where (1) the information sought has 'historically been open to the press and general public'; and (2) 'public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* (quoting *Press-Enterprise Co. v. Superior Court (Press-Enterprise II)*, 478 U.S. 1, 8 (1986)). Once the qualified First Amendment right of access attaches, it can "be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court (Press-Enterprise I)*, 464 U.S. 501, 510 (1984). "The right of access is not absolute, however, despite these justifications for the open courtroom." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179.

At least facially, this line of analysis appears most applicable—it nominally applies to a right of access to courtrooms. But a more in-depth review of the facts in each of these cases reveals that they are not quite on-point. For example, in *United States v. Miami University*, 294 F.3d 797 (6th Cir. 2002), the Sixth Circuit analyzed the constitutionality of a university regulation that prohibited the press or public from observing student disciplinary proceedings. Likewise, in *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002), the question facing the Sixth Circuit was whether the public could attend and observe deportation hearings. In both of these cases, the public was prohibited from attending these proceedings in full—they could not watch, they could not take notes, and they could not record the proceedings.

In contrast, McKay may attend the judicial proceedings in the Saginaw County Courthouse. He can attend, observe, and take notes on the proceedings. The only prohibited action is *recording* the proceedings via personal electronic devices. Thus, the instant facts are not in line with those of *Miami University* and *Detroit Free Press*, where public access was blocked in its entirety.

Instead, the present situation is more analogous to the right of access cases involving restrictions on recordings and photography. For example, in *S.H.A.R.K.*, the Sixth Circuit analyzed the constitutionality of park regulations that essentially limited the ability of the public to record events in a public park. 499 F.3d at 553. In *S.H.A.R.K.*, the Sixth Circuit also cited with approval *D'Amario v. Providence Civic Center Authority*, 639 F. Supp. 1538 (D.R.I. 1986), a case in which a photographer's request to take photographs had been denied. Thus, as in *S.H.A.R.K.* and *D'Amario*, McKay's right of access is not limited in its entirety; instead, his alleged right to record using a personal electronic device is limited.

When a person's right of access has been limited in some way—such as by placing limits on the person's right to record judicial proceedings—the Sixth Circuit acknowledges that there are competing interests at play:

> Although the press cannot command access wherever, whenever, and however it pleases, neither can government arbitrarily shroud genuinely newsworthy events in secrecy . . . . [T]he state's rulemaking power is not absolute: if the first amendment is to retain a reasonable degree of vitality, the limitations upon access must serve a legitimate governmental purpose, must be rationally related to the accomplishment of that purpose, and must outweigh the systemic benefits inherent in unrestricted (or lesser-restricted) access.   The foregoing test recognizes that the government cannot use the fact that it has made a rule as an absolute shield against access.[4]

*S.H.A.R.K.*, 499 F.3d at 561(quoting *D'Amario*, 639 F. Supp. at 1543).

To balance these competing interests, the Sixth Circuit has established a four-part test. First, a court must "ask what rule the government is invoking that prohibits the plaintiffs from access to information . . . ." *Id*. at 560.  Second, the court must determine "whether that rule 'selectively delimits the audience.'" *Id*. (quoting *D'Amario*, 639 F. Supp. at 1543).  Third, a court must "inquire into the government's stated interest for invoking the rule." *Id*. at 561. Finally, a court must "apply the applicable test to determine whether the government's stated interest is sufficiently related to the means of accomplishing that interest . . . ." *Id*.  In other words, "if the rule does not selectively delimit the audience, we uphold the restriction if it is reasonably related to the government's interest; if the rule does selectively delimit the audience, a stricter level of scrutiny will apply." *Id*.

---

[4] Neither the plaintiff in *D'Amario* nor the plaintiffs in *S.H.A.R.K.* were members of the media.  However, the courts in both cases concluded that the First Amendment analysis concerning the press was the most applicable.  These courts focused on the idea that the plaintiffs—although not members of the media—were engaged in "news gathering efforts." *S.H.A.R.K.*, 499 F.3d at 560.  This reasoning is also persuasive here.  Although McKay is not a member of the press, he is seeking to record judicial proceedings in order to "promot[e] the free discussion of governmental affairs."  Pl.'s Resp. 17 (citing *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).  This suggests that the judicial proceedings have, at the least, some newsworthy aspect to them.

**B**

Here, Saginaw County is invoking the Electronics Ban to prohibit McKay from recording judicial proceedings inside the courtroom. The Electronics Ban, which applies to all electronic recordings of any kind, does not selectively delimit the audience.[5]

Because the Electronics Ban does not selectively delimit the audience, the applicable standard of review is the rational basis standard. *S.H.A.R.K.*, 499 F.3d at 560. "The rational basis test requires the court to ensure that the government has employed rational means to further its legitimate interest." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 532 (6th Cir. 1998). Moreover, "[u]nder the rational basis review, a court usually will uphold regulations because 'the state's important regulatory interests are generally sufficient to justify them.'" *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

Defendants assert that the Electronics Ban Order serves the governmental purpose of allowing judicial officers to "better control our environment" inside the Saginaw County Courthouse. Defs.' Resp. Ex. C. Specifically, the Electronics Ban Order was enacted to limit: (1) disruptions of judicial proceedings; (2) intimidation of witnesses and jurors; and (3) jurors conducting online research. *Id*. These interests have been recognized as important to the judicial process in courtrooms, which are designated for the adjudication of civil and criminal matters. *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997); *Huminski v. Corsones*, 396 F.3d 53, 91 (2d Cir. 2004). Courtrooms must be neutral, politically impartial environments dedicated to fairness

---

[5] McKay makes no assertion to the contrary. He implies that the Ban is irrational because some members of the public are granted the right to record if they ask for permission. But anyone may ask permission to record. McKay has not alleged that he asked for permission to record and was denied, nor does he produce evidence showing that any other person who asked for permission to record was denied.

and equal treatment of the litigants. *Berner*, 129 F.3d at 27. To this end, a court has an obligation to maintain courtroom decorum.

A court's duty to protect litigants' rights to a fair trial provides an additional basis for the court's restriction. Jurors are routinely instructed to avoid outside influences—such as news coverage of the case—and to avoid engaging in independent research, including online research. Moreover, preventing juror and witness intimidation further protects litigants' rights to a fair trial. Both jurors (during voir dire) and witnesses may be less forthcoming in their answers if they were being recorded. Thus, limiting outside influences on jurors and preventing juror and witness intimidation are important, legitimate interests.

Enforcing the Electronics Ban Order is reasonably related to these legitimate governmental concerns. Certainly, prohibiting cell phones and other electronic devices will reduce the instances of ringtones interrupting judicial proceedings and make it impossible for jurors to conduct online research in the courtroom. And prohibiting the recording of jurors and witnesses will alleviate any concerns about witness and juror intimidation. Accordingly, the Electronics Ban Order does not violate McKay's First Amendment rights.

## C

The previous analysis is equally applicable to the claim that the Electronics Ban Order is unconstitutional as applied to the common areas outside the courtroom. The Electronics Ban does not selectively delimit the audience, and therefore—just as in the courtroom—the applicable standard of review is the rational basis standard. Defendants assert the same governmental interests—disruption of proceedings, witness intimidation, jurors conducting online research—and banning electronic devices is a reasonable method of protecting these interests.

- 12 -

McKay nonetheless insists that the listed governmental interests are issues only inside the courtroom and do not provide a significant interest for prohibiting electronics outside the courtroom in common areas.  The argument is not persuasive.  A ringing cellphone can interrupt courtroom proceedings even outside the courtroom.  Moreover, jurors and witnesses would be intimidated just as much if they are recorded entering and leaving the courtroom through the common areas.  And preventing jurors from taking their electronic devices inside the Governmental Center will prevent them from doing online research in the common areas.  These interests are significant, both inside the courtroom and in areas near the courtrooms.  The Electronics Ban Order is rationally related to achieving these interests outside the courtroom, and therefore the Electronics Ban Order does not violate the First Amendment.

**D**

In summary, the appropriate analysis of McKay's claims is found in *S.H.A.R.K*, which governs First Amendment claims involving the right to access and record.  Defendants have proffered important, legitimate interests in regulating the ability of the public to record events occurring inside the courthouse, and the Electronics Ban Order is reasonably related to those interests.  Accordingly, Defendants did not violate McKay's First Amendment rights by enacting and enforcing the Electronics Ban Order.

**V**

As noted above, McKay asserts that "Plaintiff's suit is not challenging access, it is challenging denial of First Amendment right of recording."  Resp. 14.  Thus, McKay appears to also be suggesting that his right to record is one of freedom of expression rather than, or in addition to, access.[6]  As explained above, it appears that the proper analysis of McKay's claim is

---

[6] However, in the same breath, McKay asserts that "Plaintiff agrees that a person does not have the First Amendment right to express themselves; Plaintiff does have the First Amendment right to receive and record

under a right of access analysis. However, even assuming that McKay's claim should be analyzed as expressive conduct, his claim is still without merit.[7]

To determine whether the government has violated an individual's free speech rights, the Sixth Circuit employs a three-step analysis:

> (1) we ask whether the speech is protected under the First Amendment; (2) if so, using the public-forum doctrine, we ascertain whether the applicable forum is public or nonpublic; and (3) applying the appropriate standard for the forum, we ask whether the government's prohibition on speech passes muster under the First Amendment.

*S.H.A.R.K*, 499 F.3d at 559 (citing *Parks v. City of Columbus*, 395 F.3d 643, 647 (6th Cir. 2005)).

Again, the distinction between recording in the courtroom and outside the courtroom is important, and the "expressive speech" analysis will be applied to both.

### A

Here, McKay seeks the right to record "public trials and public court hearings" occurring inside the Saginaw County courtrooms. Thus, the first step is to determine whether there is a "right to record" events encompassed by the First Amendment. The next step is to determine whether there is a "right to record" events in a courtroom specifically.

"It is well established that in order to be protected under the First Amendment, images must communicate some idea." *Porat v. Lincoln Towers Cmty. Ass'n*, 2005 WL 646093, at *4 (S.D.N.Y. Mar. 21, 2005). More specifically, to achieve protection under the First Amendment, a plaintiff must show that he possessed (1) a message to be communicated, and (2) an audience

---

information." Resp. 14-15. Under Plaintiff's logic, he is neither asserting a right to expression nor a right of access claim under the First Amendment, but an independent "right to receive and record". But McKay provides no analytical framework for analyzing his suggested First Amendment right to receive and record or any precedent establishing such a framework.

[7] To be clear, this analysis is not necessary to the Court's decision. Indeed, it is an inapplicable analysis to the alleged First Amendment right at issue because *S.H.A.R.K.* is controlling. However, because most of McKay's arguments are premised in a right-of-expression analysis—the nature of the fora at issue, viewpoint discrimination, intermediate and strict scrutiny—the Court will analyze the matter to address these arguments.

to receive this message, regardless of the medium in which the message is to expressed.  *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Group of Boston*, 515 U.S. 557, 568 (1995).  Therefore, the taking of photographs or videography, without more, is not protected by the First Amendment.  *Porat*, 2005 WL 646093, at *5.

However, many circuit courts have determined that videotaping implicates the First Amendment when it is used "to gather information about what public officials do on public property."  *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *see also ACLU v. Alvarez¸* 679 F.3d 583, 599-00 (7th Cir. 2012); *Glik v. Cunnliffe*, 655 F.3d 78, 79 (1st Cir. 2011).  Here, McKay is seeking to exercise this alleged right to record public officials (i.e., county judges).

But none of the cases McKay cites stand for the proposition that the courtroom is a "public place" in which he has the right to record the events.  As explained in the April 10, 2014 Order Denying Reconsideration, the Supreme Court has stated that the public *does not* have a First Amendment right to record judicial proceedings inside a courtroom:

> In *Chandler v. Florida*, 449 U.S. 560 (1981), the Supreme Court affirmed a state supreme court decision that "reject[ed] the argument of the Plaintiffs that *the first* and sixth amendments to the United States Constitution *mandate entry of electronic media into judicial proceedings*."  (emphasis added).  Moreover, in *Nixon v. Warner Communications, Inc.*, 435 U.S. 581 (1978), the Supreme Court stated: "In the first place . . . there is no constitutional right to have [courtroom] testimony recorded and broadcast."  (citing *Estes v. Texas*, 381 U.S. at 539-42).  The Supreme Court thus concluded that there is no First Amendment right to have electronic media in the courtroom.

Order 5, ECF No. 30.[8]  Thus, there is no right under the First Amendment to record judicial proceedings inside a courtroom.  McKay's claim would therefore fail at the first step of the analysis.

---

[8] The Order Denying Reconsideration also distinguished *Glick*, *Alvarez*, and *Cumming*:

**B**

However, for the sake of completeness, the rest of McKay's claim will be addressed. Assuming there is a First Amendment right to record judicial proceedings inside a courtroom, the next step is to determine the character of the courtroom—that is, whether it is a public or nonpublic forum.  There are three types of fora: "the traditional public forum, the public forum created by government designation, and the nonpublic forum."  *Jobe v. City of Cattlesburg*, 409 F.3d 261, 263-65 (6th Cir. 2005) (citing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985)).   The traditional public forum includes places like parks and streets that are "'government property that has traditionally been available for public expression.'"[9] *Id.* (quoting *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992)).  In contrast, "[t]he designated public forum consists of public property 'that the State has opened for expressive activity by part or all of the public.'"  *Id.* (quoting *Lee*, 505 U.S. at 678).

McKay contends that the Saginaw County Governmental Center and its courtrooms are public forums.  "Traditional public forums are those places 'which by long tradition or by government fiat have been devoted to assembly and debate.'"  *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir. 2004) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983)).

McKay's assertion—that the courtroom is a public forum—is flatly contradicted by Sixth Circuit precedent.  "The courtroom is a *nonpublic forum*, where the First Amendment rights of

---

> [T]o the extent that these cited cases held that there is a First Amendment right to record, these cases dealt only with recording public officials *outside* the courtroom.  Not a single cited case has held that there is a First Amendment right to record within the courtroom—nor could it, without violating Supreme Court precedent.

Order 6, n. 2.

[9] Indeed, McKay relies on cases that involved recording government officials in areas that have been consistently and repeatedly held to be public forums.  *See Glik*, 655 F.3d at 79 (recording an arrest on the Boston Common); *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d at 588 (challenging statute that prohibits recordings "in public fora in and around the Chicago area").

everyone (attorneys included) are at their constitutional nadir.  In fact, the courtroom is unique even among nonpublic fora because within its confines we regularly countenance the application of even viewpoint-discriminatory restrictions on speech."  *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (emphasis added).[10]  Thus, as a nonpublic forum, a courtroom is "less conducive to free speech rights."  *Id*. at 720 (6th Cir. 2005); *see also Huminski*, 396 F.3d at 90 ("We are particularly reluctant to conclude that government property is a public forum 'where the principal function of the property would be disrupted by expressive activity.'") (quoting *Cornelius*, 473 U.S. at 804).

## C

The third part of the analysis requires an assessment of whether the government's action is reasonable in light of the nature of the forum.  "The government may lawfully restrict speech in a nonpublic forum so long as the restrictions are viewpoint neutral and reasonable in light of the purpose served by the forum."  *Helms v. Zubaty*, 495 F.3d 252, 256 (6th Cir. 2007).  Given that courtrooms are nonpublic forums, the Electronics Ban Order "need only be reasonable in light of the purpose of the forum and reflect a legitimate government concern."  *Gen. Media Communications, Inc. v. Cohen*, 131 F.3d 273, 282 (2d Cir. 1997) (citations omitted).  It "need not be the most reasonable or the only reasonable limitation."  *Cornelius*, 473 U.S. at 808.

The first step is to determine whether the Electronics Ban Order is content-neutral or content-based regulation.  "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based."  *Turner*, 512 U.S. at 643.  In contrast, a content-neutral ordinance is one that "places no restrictions on . . .

---

[10] To be fair, several later circuit decisions have criticized the holding in *Mezibov*; however, they all also acknowledge that *Mezibov* is still controlling law.  *See Bright v. Gallia County, Ohio*, 753 F.3 d639, 654-55 (6th Cir. 2014) (reluctantly following the holding in *Mezibov* because it "remains binding upon subsequent panels, under the law-of-the-circuit doctrine, until overturned by this court en banc or by the United Supreme Court.").

either a particular viewpoint or any subject matter that may be discussed." *Hill v. Colorado*, 530 U.S. 703, 723 (2000). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781 (1989).

Here, the Electronics Ban Order is content-neutral because it prohibits all electronic recording of all events occurring within the courtrooms: "All persons and property (including closed containers) entering court related facilities are subject to search by Sheriff Deputies for the purpose of enforcing [the Electronics Ban Order]." Pl.'s Mot. Summ. J. Ex. 2.[11] *See also Rouzan v. Dorta*, 2014 WL 1716094, at *12 (C.D. Ca. March 12, 2014) ("Further, the restriction on recording was viewpoint neutral. Neither Rule 1.150 nor the court's cellphone policy restricted speech based on content; rather, the rule restricted recording of all court proceedings . . . .").

McKay nevertheless asserts that the Electronics Ban Order is not viewpoint-neutral[12] because "[t]he Pfau Directive allows, without question, that certain exercisers of the First Amendment, particularly the major local media outlets, need not seek any permission under the [Electronics Ban Order] or via the Pfau Directive before being allowed to bring in <u>and use</u> recording devices in the Saginaw County Governmental Center and its courtrooms." Resp. 18 (emphasis original).

---

[11] Admittedly, it is difficult to imagine a content-based regulation governing recording, given that the act of recording is not itself expressive. That is, is the way that a member of the public records judicial proceedings so different from the way a professional cameraman records judicial proceedings? Moreover, are they so different as to espouse a particular viewpoint? The inanity of this argument reinforces this Court's conclusion that the right to record under the First Amendment is better analyzed under a "right to access" rather than a "right to expression."

[12] "Viewpoint discrimination is a subset of content discrimination . . . . A viewpoint-based law goes beyond mere content-based discrimination and regulates speech based upon agreement or disagreement with the particular position the speaker wishes to express." 1 Smolla & Nimmer on Freedom of Speech § 3:9 (citing *Madison Joint Sch. Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 176 (1976)).

McKay's assertion contains several important factual errors.  First, nothing in the Electronics Ban Order itself permits members of the media to bring in electronic devices without seeking prior approval.  *See* Pl.'s Mot. Summ. J. Ex. 2 ("*All persons* . . . are subject to search by Sheriff Deputies for the purpose of enforcing this [Electronics Ban Order].").  Thus, on its face, the Electronics Ban Order is content- and viewpoint-neutral.

Indeed, only the Pfau Directive,[13] which governs how the Sheriff's Department will help enforce the Electronics Ban Order, states that there are some categories of people who may bring in their electronics without seeking permission:

> Starting 16 December 2013 there will be no electronic recording device allowed (cell phone, camera, tablets, laptop computers, ect. [*sic*]) in the Saginaw County Courthouse by any members of the public . . . This policy will exclude the following persons:
>
> 1)      Courthouse employees
>
> 2)      Active members of the State Bar of Michigan
>
> 3)      Law enforcement personal [*sic*] acting in that capacity
>
> 4)      Probation and Parole officers acting in that capacity
>
> 5)      *Representatives of media agencies authorized pursuant to AO 1989-1*
>
> 6)      Individuals granted ad hoc permission by an authorized judge.

Pfau Directive (emphasis added).  Thus, McKay is correct that members of the media may bring in electronic devices without first seeking permission from a judge.  But, importantly, nothing in the Pfau Directive permits a member of the media to use that electronic device to record events

---

[13] To be clear, the Electronics Ban Order was issued by the judges of the Saginaw County Court pursuant to their authority under Mich. Ct. R. 8.112, while the Pfau Directive was issued to members of the Saginaw County Sheriff's Department by Lieutenant Randy Pfau.  In other words, it does not appear that the Saginaw County Court judges had any role in developing the Pfau Directive, nor does it appear that the Saginaw County Sheriff's Department played any role in developing the Electronics Ban Order.  At various times during this litigation, Defendants have asserted that they are not a proper party to this suit.  However, no such argument was made in their instant motion for summary judgment.

in the courtroom. Thus, the ability to use the electronic device is still governed by the Electronics Ban Order, which states that use of electronic devices is prohibited "[e]xcept with a judge's permission . . . ." Pl.'s Mot. Summ. J. Ex. 2. Critically, then, although members of the media (along with lawyers, courthouse employees, and law enforcement) may bring in their electronic devices without first seeking permission, they must still first ask for permission before exercising whatever First Amendment right they have to record proceedings.

To bolster his claim that the Electronics Ban Order is "viewpoint-discriminatory", McKay advances several instances in which the media have recorded various judicial proceedings. *See* Resp. Ex. D (photograph of defendant entering courtroom); Ex. E (press photograph of judge in the courtroom). From the photographs, it is clear that members of the media have been allowed to photograph and record courtroom events in at least two instances. But it is not clear whether the media asked for permission to record the events, as required by the Electronics Ban Order. Indeed, McKay makes no assertion that the media failed to seek permission but was nonetheless allowed to record events. As already noted, McKay has never identified a single person (or member of the media) who requested permission to record judicial proceedings and was denied. Likewise, he has never identified a single person (or member of the media) who was able to record courtroom events without first seeking permission. The fact that a member of the press has been able to photograph courtroom proceedings—without any more detail regarding the factual circumstances—is not enough to show that the Electronics Ban Order is a content-based restriction on recording.[14]

---

[14] Moreover, even if letting the media bring in electronic devices is viewpoint-discriminatory, the Electronics Ban Order would still be constitutional under *Mezibov*. 411 F.3d at 718 ("In fact, the courtroom is unique even among nonpublic fora because within its confines we regularly countenance the application of even viewpoint-discriminatory restrictions on speech.").

And because the Electronics Ban Order is content-neutral, it need only be reasonable in light of the purpose of the courtroom.  As explained above, the Electronics Ban Order protects the legitimate government interests of lessening courtroom distractions, preventing juror and witness intimidation, preventing online research.  *See Mead*, 583 F. Supp. 2d at 1239 ("The State 'has a legitimate need to preserve an orderly and safe place to conduct the public's business" and to maintain "proper order and decorum in the courtroom.'") (quoting *Sammartano v. First Judicial District Court*, 303 F.3d 959, 967-68 (9th Cir. 2002).  Banning electronic communication devices is a reasonable method for protecting these interests.  Therefore, the Electronics Ban Order reasonably fulfills a legitimate and demonstrated governmental need.  *See Gen. Media Communications, Inc.*, 131 F.3d at 282.  Accordingly, even analyzing the matter as a right to expression, the Electronics Ban Order is constitutional under the First Amendment.

## D

The same analysis is applicable in determining whether the Electronics Ban violates the First Amendment as applied outside the courtroom, i.e., in the common spaces of the Saginaw County Governmental Center.

The first question is whether there is a First Amendment right to record activities occurring in the common spaces.  In its April 10, 2014 Order, the Court suggested that there may be a First Amendment right to record in the common spaces, but that the parties had not provided any briefing on the issue: "Although there is no First Amendment right to tape and record courtroom proceedings, some courts have held that the media may have the right to record events taking place outside the courtroom and any restrictions on that right must be reasonable."  Order 18.

Assuming there is a right to record, the next step is to determine whether the common areas surrounding the courtrooms is a public or nonpublic forum. Generally, courts have concluded that the entire interior of a courthouse is a non-public forum. *See Grace*, 461 U.S. at 178-80 (holding that the Supreme Court building and its grounds other than public sidewalks are not public forums, and noting "[courts have] not been traditionally held open for the use of the public for expressive activities."); *Sammartano*, 303 F.3d at 966 (holding that judicial and municipal complexes are nonpublic forums); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) ("The lobby of the courthouse is not a traditional public forum or a designated public forum, not a place open to the public for the presentation of views. . . . It is a nonpublic forum . . . ."); *United States v. Gilbert*, 920 F.2d 878, 884 (11th Cir. 1991) (holding that although a courthouse was a nonpublic forum, the unenclosed courthouse plaza was a designated public forum); *Huminski*, 396 F.3d at 91-92 (courthouse and adjacent parking lots are nonpublic forums); *see also Cox v. Louisiana*, 379 U.S. 536, 554-55 (1965) (applying reasonable time-manner-place restrictions to expressive free speech activity outside a courthouse).

However, the Saginaw County Governmental Center contains not only courtrooms, but also legislative offices. The presence of these legislative offices does not change the characterization of the Governmental Center, though: "Municipal buildings are not traditionally regarded as forums for expressive activity . . . ." *Hansen v. Williamson*, 440 F. Supp. 663, 679 (E.D. Mich. 2006) (citing *Sammartano*, 303 F.3d at 966 (building operated for purpose of conducting business of the county and of the municipal and state courts is a nonpublic forum)). Therefore, even the common areas outside the courtrooms are non-public fora. Accordingly, the Electronics Ban Order as applied to the common areas outside the courtrooms need only be reasonable.

As explained several times above, the Electronics Ban Order survives this reasonableness standard. The Electronics Ban Order protects the legitimate government interests of lessening courtroom distractions, preventing juror and witness intimidation, preventing online research outside the courtroom.

In determining whether it is reasonable, the Seventh Circuit's opinion in *Dorfman v. Meiszner*, 430 F.2d 558 (7th Cir. 1970), provides guidance. In *Dorfman*, the Seventh Circuit addressed a local court rule that banned the use of electronic media inside a federal building and adjacent exterior areas. Specifically, the court rule banned the "taking of photographs in the courtroom or its environs," where the environs included "the entire 25th, 24th, 23rd, 21st, 20th, 19th, 18th, 16th, 15th, 14th, 2nd and ground floors, including the plaza and sidewalks surrounding the Courthouse." *Id*. at 560. Despite the broad prohibition on recording in the federal building, the courtrooms were located only on the 19th floor and above. The remaining floors housed several federal agencies, including the Treasury Department, congressional offices, the Commission on Civil Rights, the Secretary of the Air Force, the Commerce Department, a health clinic, the Equal Employment Opportunity Commission, and the office of a United States senator. *Id*. at n. 2.

The *Dorfman* Court concluded that, although "the district court may, by rule, exclude photographing and broadcasting from those areas of the courthouse which would lead to disruption or distraction of judicial proceedings," the local court rule nevertheless "goes beyond the scope permitted by the First Amendment." *Id*. at 561. The court first clarified that

> the district court was acting within its discretion in prohibiting photographing and broadcasting inside as well as in the areas adjacent to courtrooms. Moreover, the extension of the prohibition to the entire floor on which a courtroom is located, as well as the elevators on the first floor, is also permissible as a measure reasonably calculated to promote the integrity of the court's proceedings.

- 23 -

*Id*. at 562.  In addition, floors that housed the United States Marshal, the offices of the United States Attorney, and the grand jury room "may be treated in the same manner as those floors on which are located the courtrooms of the district court."  *Id*. n. 4.  The ban was permissible for these areas because "the law not only allows but compels the courts to insure that judicial proceedings are conducted in an orderly, solemn environment free from the interferences which so often accompany modern news coverage of the events."  *Id*. at 561.

In contrast, because the prohibition extended to "floors of the federal building where there are no courtrooms, to the large center lobby on the first floor, and to the plaza and outside areas surrounding the building," the ban was impermissibly broad.  *Id*. at 562.  Given the architecture of the federal building—and the fact that the windowless courtrooms were located 19 floors above the lobby and outside areas—no foreseeable commotion in the lobby could disturb the courtroom proceedings.  Moreover, the ban also applied to floors where there were no courtrooms.  Accordingly, because the ban covered areas that offered no "immediate threat to the judicial proceedings," part of the ban violated the First Amendment rights of the press.

Here, in contrast to the situation in *Dorfman*, the Electronics Ban Order does not even apply to the entirety of the Saginaw County Governmental Center—it applies only to "court related facilities."  The court-related facilities include the entirety of the third and fourth floors of the Governmental Center because these floors consist only of the 70th Judicial District Court and the 10th Judicial Circuit Court, respectively.  Defs.' M. Summ. J. 12, Ex. A.  On the first and second floor, the Electronics Ban Order applies only to the areas housing the Probate Court, the Family Division of the 10th Circuit Court, the Court Administrative Offices, Friend of the Court offices, Probations offices, and related common areas.  *Id*.  These are areas where electronic

recording could lead to disruption or distraction of judicial proceedings.  *Dorfman*, 430 F.2d at 562.

Unlike in *Dorfman*, however, the Electronics Ban Order does *not apply* to non-court related facilities.  These areas include the Prosecutor's Office, the boardroom of the Saginaw County Commission, or the offices of the County Controller, Clerk, Treasurer, Financial Services or Equalization.  Defs.' M. Summ. J. 12, Ex. A.  Members of the public, including McKay, are still free to bring in and use their electronic recording devices in these areas. Because the Electronics Ban Order only applies in areas that could lead to disruption of judicial proceedings, it is a reasonable restriction.

## VI

In his response, McKay also appears to use the issue of "overbreadth" as a defense to Defendants' motion for summary judgment.  That is, although McKay's complaint asserts that the Electronics Ban Order violates the First Amendment because it is overbroad, McKay also appears to be using it as a defense.

A facial challenge to a law's constitutionality is an effort "to invalidate the law in each of its applications, to take the law off the books completely."  *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc).  Sustaining a facial attack to the constitutionality of a state law is "momentous and consequential. It is an 'exceptional remedy.'"  *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (quoting *Carey*, 614 F.3d at 201).

When a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the "facial challenge" is an "overbreadth challenge."  *Connection Distrib.*, 557 F.3d at 335.  Instead of having to prove that *no* circumstances exist in which the enforcement of the statute would be constitutional, the plaintiff bears a lesser burden: "to demonstrate that a

'substantial number of instances exist in which the law cannot be applied constitutionally.'"
*Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) (quoting *Richland Bookmart, Inc. v. Knox
Cnty.*, 555 F.3d 512, 532 (6th Cir. 2009)).  Not just any assertion of overbreadth will do—the
law must be *substantially* overbroad—a concept that requires a comparison between the
legitimate and illegitimate applications of the law.  As the Supreme Court explained:

> [T]he existence of a "chilling effect," even in the area of First Amendment rights,
> has never been considered a sufficient basis, in and of itself, for prohibiting state
> action.  Where a statute does not directly abridge free speech, but—while
> regulating a subject within the State's power—tends to have the incidental effect
> of inhibiting First Amendment rights, *it is well settled that the statute can be
> upheld if the effect on speech is minor in relation to the need for control or the
> conduct and the lack of alternative means for doing so.*

*Younger v. Harris*, 401 U.S. 37 (1971) (emphasis added); *see also Speet*, 726 F.3d at 873 ("If the
law does not reach a substantial amount of constitutionally protected conduct, then the
overbreadth challenge must fail.") (internal citations omitted).  In other words, the overbreadth
must be not only "real, but substantial as well, judged in relation to the statute's plainly
legitimate sweep."  *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).  "Because of the wide-
reaching effects of striking down a statute on its face . . . we have recognized that the
overbreadth doctrine is 'strong medicine' and have employed it with hesitation, and then 'only as
a last resort.'"  *Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32 38 (1999).
The overbreadth claimant bears the burden of demonstrating from the text of the law and from
*actual fact* that substantial overbreadth exists.  *J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379 (6th
Cir. 2008).

The doctrine of substantial overbreadth "involves an inquiry into the 'absolute' nature of a law's suppression of speech." *Connection Distrib.*, 557 F.3d at 340.[15]   A facial challenge based on substantial overbreadth "describe[s] a challenge to a statute that in all its applications directly restricts protected First Amendment activity and does not employ means narrowly tailored to serve a compelling governmental interest." *Sec'y of State of Md. v. Joseph H. Munson Co., Inc*. 467 U.S. 947, 966 n.13 (1984).

McKay cannot carry his burden to show that the Electronics Ban Order is substantially overbroad.  McKay asserts that the Electronics Ban Order restricts his First Amendment right to record public officials because it bans recording inside the courthouse.  But as explained above, under any First Amendment analysis, the Electronics Ban Order does not impermissibly restrict McKay's First Amendment rights.  Therefore, he has not shown that the Electronics Ban Order impermissibly restricts protected First Amendment activity—let alone restricts a "substantial amount" of constitutionally-protected conduct.

As part of his overbreadth challenge, McKay contends that the Saginaw County judiciary does not have the authority to regulate the common areas outside the courtroom.  "If a regulation is necessary, the authority belongs to the Saginaw County Board of Commissioners as the facility owner, not the courts and the court's deputies."  Resp. Br. 12 (citing Mich. Ct. Rule 8.115(C)(1)).   And, McKay continues, because the Saginaw judiciary lacks the ability to promulgate rules for common areas outside the courtroom under state law, the Electronics Ban Order violates the First Amendment of the federal Constitution.

This argument is unavailing in every respect, even assuming for the moment that the Saginaw Judiciary lacks the ability under state law to promulgate rules pertaining to common

---

[15] The Sixth Circuit has acknowledged that "the concept of 'substantial overbreadth' has some elusive qualities." *Connection Distrib. Co.*, 557 F.3d at 340; *see also Taxpayers for Vincent*, 466 U.S. at 800 ("The concept of 'substantial overbreadth' is not readily reduced to an exact definition.").

areas.  First, a violation of a state law is not *per se* violation of the federal Constitution, and McKay presents no precedent to the contrary.  That is, accepting McKay's argument, just because the judiciary may have violated state law does not automatically mean they violated the federal Constitution.  They are two separate and independent questions with two entirely different sources of law.[16]

Second, it is unclear how an alleged violation of state law factors into the overbreadth analysis.  To prevail on an overbreadth challenge, McKay must show that a substantial number of applications of the Electronics Ban violate the First Amendment of the federal Constitution.  Here, he appears to be arguing that a substantial number of applications of the Electronics Ban (i.e., every application outside the courtroom) violate *Michigan law* because the Saginaw Judiciary did not have the authority to regulate common areas.  But, again, just because the Electronics Ban Order is argued to have violated Michigan law does not mean that it violates the federal Constitution.  McKay cannot show that a substantial number of applications violate the First Amendment of the federal Constitution, and McKay's overbreadth challenge will therefore be denied.

## VII

In his motion for summary judgment, McKay alleges that the Electronics Ban Order gives government officials "unbridled discretion" and therefore violates the First Amendment. *See* Br. 7 ("While the exercise of First Amendment rights are subject to restrictions, a law cannot condition the free exercise of First Amendment activities on the *unbridled discretion of government officials*.") (emphasis added).

---

[16] To be clear, McKay did not allege any violations of state law in his complaint.

**A**

"Any system of prior restraints of expression [bears] a heavy presumption against its constitutional validity, and a party who seeks to have such a restraint upheld thus carries a heavy burden of showing justification for the imposition of such a restraint." *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d at 477, 485 (6th Cir. 2002) (quoting *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971)).  Specifically, the prior restraint must not delegate overly broad licensing discretion to official decision-makers.  *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992).

But the issue of standardless discretion applies only to First Amendment claims involving *expressive* activity.  *See Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 , 755-56 (1988) ("[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to *permit or deny expressive activity . . .*") (emphasis added); *Miller v. City of Cincinnati*, 622 F.3d 524, 532 (6th Cir. 2010) ("Because unfettered governmental discretion over the licensing of *free expression* constitutes a prior restraint . . . .") (emphasis added) (internal quotation marks omitted).

As explained above, McKay's alleged right to record events is one of access, not expression.  Therefore, the standardless discretion limitation is not applicable here, and McKay's motion for summary judgment will be denied on this ground.

**B**

But even if the Court does apply the standardless discretion analysis to the instant case, McKay would not be entitled to summary judgment.  As with other First Amendment analyses, the proper starting point is to determine the nature of the forum in which McKay seeks to exercise his alleged First Amendment right to record.  *M.A.L. ex rel. M.L. v. Kinsland*, 543 F.3d

841, 846 (6th Cir. 2008) ("The extent to which the government may regulate speech in a particular forum depends upon the nature of the forum.").

As explained above, both the courtrooms and the Saginaw County Government Center are nonpublic forums. The Supreme Court has not yet applied the standardless discretion outside the context of a traditional public forum, but several circuits have. *See Child Evangelism Fellowship of MD, Inc. v. Montgomery County Public Schools*, 457 F.3d 376, 386 (4th Cir. 2006). These circuits have further noted that public officials have more discretion in limiting speech in nonpublic forums:

> This does not mean that the unbridled discretion analysis is precisely the same when a limited public or nonpublic forum, rather than a traditional public forum, is involved. The unbridled discretion inquiry is "not a static inquiry, impervious to context"; rather a court will review a grant of discretion "in light of the characteristic nature and function of that forum." *Ridley v. Mass. Bay. Transp. Auth.*, 390 F.3d 65, 94-95 (1st Cir. 2004). "That discretionary access is the defining characteristic of the nonpublic forum suggests that *more official discretion is permissible in a nonpublic forum than would be acceptable in a public forum* . . . ."

*Child Evangelism*, 457 F.3d at 387 (internal edits omitted) (emphasis added). Indeed, as the Sixth Circuit concluded, First Amendment rights are "at their constitutional nadir" in the courtroom. *Mezibov*, 411 F.3d at 719. In *Mezibov*, the Sixth Circuit concluded that "in the context of the courtroom proceedings, an attorney retains *no personal First Amendment rights* when representing his client in those proceedings." *Id*. 720-21 (emphasis added). This lack of First Amendment rights is equally applicable to others in the courtroom:

> We cannot believe (and have come across no authority to suggest) that other trial participants, with the possible exception of an actual party to the case, *possess any First Amendment* right to speak up or otherwise present a point of view in the courtroom. We can conceive of no such right for jurors, court reporters, bailiffs, or spectators to interrupt a judicial proceeding . . . .

*Id*. at 718-19 (emphasis added).

- 30 -

Given the lack of almost any First Amendment right the public has inside the courtroom, the government has much more leeway in imposing restrictions on expressive conduct.

Because a courthouse/municipal building is a nonpublic forum, the Saginaw County Governmental Center "is entitled to put time, place, and manner restrictions on [] speech so long as the restrictions are viewpoint neutral and reasonable in light of the [government's] interest in the effectiveness of the forum's intended purpose." *Kinsland*, 543 F.3d at 847 (citing *United States v. Kokinda*, 497 U.S. 720, 730 (1990).

This Court has already explained numerous times that the Electronics Ban Order is a reasonable restriction on McKay's alleged First Amendment right to record—both inside and outside the courtrooms. Accordingly, summary judgment on Count V of his Complaint, alleging "unbridled discretion", will be denied.

## VIII

In summary, under any analysis (right of expression, right of access, overbreadth, unbridled discretion), McKay's alleged First Amendment arguments are meritless. Therefore, his motion for summary judgment will be denied and Defendants' motion for summary judgment will be granted.

## A

Defendants, however, moved for summary judgment only on McKay's First Amendment claims—not on his Fifth Amendment or Fourteenth Amendment claims.[17] Therefore, McKay's Fifth Amendment and Fourteenth Amendment claims will proceed to trial.

---

[17] In their reply brief, Defendants assert that those claims should be dismissed because they "are derivative of an asserted constitutional right to record trial proceedings which does not exist." Defs.' Reply 6. Defendants did not, however, raise this argument in their motion for summary judgment. "When a movant submits additional evidence or arguments in support of summary judgment after the filling of the non-movant's response, district courts have the option of either disregarding that additional evidence or providing the non-movant with the opportunity to file a surreply." *International-Matex Tank Terminals-Illinois v. Chemical Bank*, 2009 WL 1651291, at *2 (W.D. Mich. June 11, 2009) (quoting *Magoffe v. JLG Indus., Inc.*, 2008 WL 2883183, at *2 (D.N.M. May 7, 2008). McKay has

**B**

As a final matter, Defendants request costs and attorney fees "so wrongfully incurred" due to McKay's lawsuit.  Defs.' Mot. Summ. J. 25.  Defendants have not cited any caselaw to support their request, nor have they provided any kind of explanation for why they are entitled to costs and attorney fees.  The only reference to recovery fees is the last sentence of the motion, in which "Defendant respectfully requests this Honorable Court enter an Order dismissing the cause of action and awarding Defendant[18] its costs and attorney fees so wrongfully incurred."  Defs.' Mot. Summ. J. 25.  Accordingly, Defendant's request for attorney fees will be denied without prejudice.

**IX**

Accordingly, it is **ORDERED** that Plaintiff McKay's Motion for Summary Judgment as to Count V (ECF No. 35) is **DENIED**.

It is further **ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 44) is **GRANTED IN PART** to the extent that its seeks summary judgment on Plaintiff McKay's First Amendment claims.  Defendants' Motion for Summary Judgment (ECF No. 44) is **DENIED WITHOUT PREJUDICE IN PART** to the extent it seeks recovery of costs and attorney fees.

It is further **ORDERED** that Counts I, III, IV, and V of Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE** to the extent that Plaintiff claims that the Electronics Ban Order is unconstitutional as applied within the courtrooms of the Saginaw County Governmental Center.

---

not sought leave to file a sur-reply, and therefore this Court will disregard Defendants' arguments that McKay's Fifth and Fourteenth Amendment claims should be dismissed.
[18] Apparently, Defendants seek costs and attorney fees related to only one of the Defendants—either Sheriff Federspiel or Lieutenant Sheriff Pfau.  Defendants did not, however, identify which one was seeking to recover.

It is further **ORDERED** that Counts I, III, IV, and V of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE** to the extent that Plaintiff claims that the Electronics Ban Order is unconstitutional as applied outside the courtrooms in the Saginaw County Governmental Center.


<div style="margin-left:40%;">

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

</div>

Dated: December 11, 2014

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 11, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS