UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT W. McKAY,

                    Plaintiff,                        Case No. 14-cv-10252

v.                                         Honorable Thomas L. Ludington

WILLIAM L. FEDERSPIEL, and
RANDY F. PFAU,

                    Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT, DISMISSING COUNTS II & IV OF FIRST AMENDED COMPLAINT WITHOUT PREJUDICE, AND DENYING MOTIONS FOR CERTIFICATE OF APPEALABILITY AS MOOT**

Once more, this case is before the Court on dispositive pretrial motions. Plaintiff Robert McKay and Defendants William Federspiel and Randy Pfau have filed cross-motions for summary judgment. ECF Nos. 67 & 68. The facts of this case, again, are as follows.

Plaintiff Robert McKay challenges the constitutionality of an administrative order issued by the Saginaw County Circuit Court. The administrative order (the "Electronics Ban Order" or "Ban Order") prohibits members of the public from possessing and using cell phones, cameras, and other electronic communication devices in certain areas of the Saginaw County Governmental Center. McKay alleges that the Electronics Ban Order violates the First, Fifth, and Fourteenth Amendments of the United States Constitution that protect his right "to attend, observe, and *record* matters of public concern" within the Saginaw County Governmental Center. Compl. ¶ 1, ECF No. 1 (emphasis original).

McKay seeks summary judgment on Count II of his complaint, his void-for-vagueness challenge to the Electronics Ban Order. Defendants request summary judgment on Counts II & VI of McKay's complaint, the void-for-vagueness challenge and McKay's claim that the Ban Order runs afoul of the Equal Protection Clause of the Fourteenth Amendment. Because McKay lacks standing to bring either of these claims, Defendants' motion will be granted and McKay's complaint will be dismissed.

**I.**

Robert McKay is a Tuscola County resident who is "politically active in the elimination of administrative orders, issued by local judges, to conduct proceedings without the benefit of public recording." Pl.'s Mot. Summ. J. 2. On August 7, 2013, the Saginaw County Board of Commissioners entertained a proposed ordinance that would ban devices from being brought into the Saginaw County Governmental Center. *Id*. at 3. The Saginaw County Governmental Center houses the legislative and executive offices of Saginaw County, including the Saginaw County Board of Commissioners, County Treasurer, County Clerk, Register of Deeds, as well as judicial offices and courtrooms for the Tenth Circuit Court of Saginaw County, the Seventieth District Court of Saginaw County, the Probate Court of Saginaw County, and the Saginaw County Friend of the Court. *Id*.

**A.**

McKay appeared at the Saginaw County Board of Commissioners' meeting to voice his opposition to the proposed ordinance. *Id*. McKay "argued regarding the unfairness for certain groups of people to not have to comply with the same rules as other citizens and asked the Committee to not approve the proposed ordinance." *Id*. at 3-4. After listening to McKay and other citizens speak, the Board of Commissioners postponed its decision on the proposed

ordinance. *Id*. at 4. The proposed ordinance restricting electronics throughout the entire

Governmental Center was never brought back to the table for further consideration. *Id*.

When the Board of Commissioners did not approve the proposed ordinance, the Chief

Judges of the Saginaw County Courts issued an Electronics Ban Order, which prohibits many

types of electronic devices in the courtrooms and surrounding areas. Pl.'s Mot. Summ. J. Ex. A.

The Electronics Ban Order provides:

> Except with a judge's permission, possession and/or use of the following devices
> is prohibited in court related facilities:
>
> - audio and/or video recording and/or broadcasting devices
> - camera/photographic devices
> - electronic communication devices
>
> Electronic communication devices include any device capable of communicating
> information from one person to another, including cell phones, pagers, two way
> radios, and laptop/notebook/tablet computers.
>
> Court related facilities include the Saginaw County Circuit Court, District Court,
> and Probate Court (including the entire Juvenile/Family Court facility)
> courtrooms, court administrative offices, Friend of the Court offices, probation
> offices, and related common areas.

*Id*. The Electronics Ban Order is intended to address at least three problems: "ring tones

disrupting proceedings, spectators photographing witnesses, jurors conducting on-line research,

etc." Mot. Prelim. Inj., Ex. C, ECF No. 2.

A person may be exempted from the Electronic Ban Order with a judge's permission. For

example, the Chief Judges have exempted attorneys—who are licensed and regulated by the

State Bar of Michigan—from the Electronic Ban Order: "This significant exception recognizes

that attorneys are officers of the court, increasingly dependent on electronic devices to conduct

on-line research, assist in presentations, manage schedules, gain access to office and colleagues,

etc., and yet appreciate the need to maintain decorum." Mot. Prelim. Inj., Ex. C; *see also* Mich.

Ct. R. 8.109(B) ("The court may regulate the manner of audio or photographic recording so that it does not disrupt the proceeding."). In addition, it appears that some media outlets have already obtained permission to take photographs during criminal trials. *See* Mot. Prelim. Inj., Ex. D, E. Violation of the Electronics Ban Order "may result in appropriate sanctions, including (A) being summarily barred or removed from court related facilities, and/or (B) imposition of a fine, including confiscation of any offending device, incarceration, or both for contempt of court." Pl.'s Mot. Summ. J., Ex. A.

On December 13, 2013, Lieutenant Randy Pfau sent a memo to all Sheriff's Department personnel alerting them of the recently instituted Electronics Ban Order. Pl.'s Mot. Summ. J., Ex. B. Pfau explained that if prohibited electronics "are brought in they will be treated as any other restricted item and people will be able to take them back to their cars. . . . Persons not wishing to comply with this order will be barred from the courthouse and those in violation inside the building may have their electronic device confiscated." *Id.*

**B.**

McKay filed a motion for preliminary injunction on January 20, 2014, seeking to enjoin the Electronics Ban Order from taking effect. Mot. Preliminary Injunc. 2. The injunction was denied because (1) McKay did not have standing to challenge the Electronics Ban Order as applied inside the courtrooms, and (2) the parties had provided insufficient factual information to determine whether the Electronics Ban Order was unconstitutional as applied to the common areas outside the courtrooms. Order 21, ECF No. 30.

On August 15, 2014, McKay filed a motion for summary judgment on Count V of the Complaint, which alleges that the Electronics Ban Order gives government officials "unbridled discretion" in choosing who may photograph and record events inside the Saginaw County

Government Center. Pl.'s Mot. Summ. J. 1, ECF No. 35. Defendants also filed a motion for summary judgment, seeking dismissal of all of McKay's First Amendment claims.[1] Defs.' Mot. Summ. J. 35, ECF No. 44. Because the Electronics Ban Order does not infringe on McKay's First Amendment rights, his motion for summary judgment was denied and Defendants' motion for summary judgment was granted. Op. & Order Denying Pl.'s Mot. Summ. J. & Granting In Part and Denying In Part Def.'s Mot. Summ. J., ECF No. 52. McKay sought reconsideration of that opinion. ECF No. 56. That relief was not granted. ECF No. 64.

The parties then sought to file second motions for summary judgment on the two claims, Counts II and VI, that went unaddressed in the first round of summary judgment briefing. ECF No. 65. That permission was granted. *Id.*; *see also* E.D. MICH. L.R. 7(b)(2) ("A party must obtain leave of court to file more than one motion for summary judgment."). The parties then filed additional cross-motions for summary judgment which are now before the Court. ECF Nos. 67 & 68. Defendants allege that McKay lacks standing to bring his void-for-vagueness and equal protection claims. Def.'s Second Mot. Summ. J. 11-15 & 19-21, ECF No. 67. In the alternative, he argues that both challenges are meritless, since his conduct is plainly proscribed by the Ban Order and because McKay cannot establish the necessary showing of disparate treatment as a class of one. *Id.* at 15-19 & 21-26. McKay argues that summary judgment is appropriate on Count II because the Ban Order is a criminal penalty that insufficiently describes the behavior that it penalizes. Pl.'s Second Mot. Summ. J., ECF No. 68.

Since McKay does not have standing to pursue either Count II or VI of his First Amended Complaint, Defendants motion for summary judgment will be granted. As a result, McKay's second motion for summary judgment will be denied and his complaint will be

---

[1]   Defendants' first motion for summary judgment did not seek summary judgment on McKay's Fifth and Fourteenth Amendment claims.

dismissed. Lastly, McKay's pending request for a certificate of appealability to pursue an interlocutory review of this Court's December 11, 2014 Opinion and Order will be denied. The request is mooted by the final disposition of his claim and entry of judgment.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary

judgment for one side or the other is necessarily appropriate." *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003). Each motion must be evaluated on its own merits and all facts viewed and inference drawn "in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

### III.

The parties now bring cross-motions for summary judgment. Defendants move for summary judgment on Counts II & VI of McKay's First Amended Complaint. McKay moves for summary judgment on Count II of his complaint.

As an initial matter, Defendants contest McKay's standing to pursue the claims he brings in Counts II & VI. Since McKay does indeed lack standing to bring these claims it is unnecessary to examine the merits of either count. Defendants' motion for summary judgment will be granted on this ground and Counts II & VI of McKay's First Amended Complaint will be dismissed without prejudice.

### A.

Defendants' first challenge McKay's standing to bring his void-for-vagueness claim. Primarily, Defendants allege that McKay cannot show that he is asserting his own rights, rather than the rights of a third party—a requisite to meet the prudential standing requirements. Defendants also challenge McKay's ability to meet the constitutional injury-in-fact standing requirement of Article III.

### 1.

McKay answers the first allegation by Defendants—that he is not asserting his own rights—by averring that it is indeed he who seeks to record inside the Saginaw County courts and court buildings but feels that he is unable to do so. For Defendants, this averment is

insufficient. But, to the contrary, McKay need not allege more at this stage than his own desire to record.[2]

McKay alleges that he desires to engage in behavior that he fears may be prohibited by the vague Ban Order. On this basis McKay claims that the act is void-for-vagueness as it is applied to his conduct. There is no indication in any of McKay's pleadings that he is not actually seeking to vindicate his own rights or that he is not sincere in his claims of a perceived personal wrong. McKay does not lack prudential standing to bring Count II of his complaint.

**2.**

Defendants also raise constitutional standing concerns. Specifically, they claim that McKay cannot show the requisite injury-in-fact to maintain constitutional standing under Article III. McKay responds to this claim by answering that he faces a significant probability of future harm, and so he meets the imminence requirement of constitutional standing. But McKay's future harm is merely speculative at this point. So much so that he actually does not meet the constitutional standing requirements. For that reason, McKay's claim will be dismissed for lack of standing.

---

[2]    In support of their claim that McKay is not actually pursuing his own rights Defendants marshal the support of *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, which provides:

> The court should . . . examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

455 U.S. 489, 494-95 (1982). But the Supreme Court's admonition in *Hoffman Estates* does not address whether a plaintiff has standing to bring an as applied void-for-vagueness claim. Rather, *Hoffman Estates* explains the manner in which a court should proceed through a void-for-vagueness claim. That is, a court should not proceed to address a facial challenge if an as-applied challenge fails.

In some respect, then, *Hoffman Estates* and similar cases speak to prudential standing concerns when a plaintiff levies a facial void-for-vagueness challenge. *See, e.g., Parker v. Levy*, 417 U.S. 733, 755-756 (1974) (overturning lower court decision where that court determined plaintiff "had standing to challenge the vagueness of [a statute] as they might be hypothetically applied to the conduct of others, even though he was squarely within their prohibitions"). It does not address standing to pursue claims of as-applied vagueness. As such, it is not helpful here.

Unlike First Amendment overbreadth challenges, "[t]he void for vagueness doctrine . . . requires the person raising it to show that **he himself** has been injured by the overly broad language." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 n.14 (3d Cir. 1992) (emphasis added). Vagueness challenges, like all other cases brought in federal court, must meet the three constitutional standing requirements. *Harrell v. The Florida Bar*, 608 F.3d 1241, 1253-54 (11th Cir. 2010).

> First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision. The party invoking federal jurisdiction bears the burden of establishing these elements.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotation marks omitted). McKay cannot satisfy this first element.

In *Lujan*, the Supreme Court notably held that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Id*. But, the Court went on, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id*. (internal citations and quotation marks omitted). McKay's interests are not much different. He seeks to observe an animal species (those partaking in legal proceedings) and record them while doing so. But like the plaintiffs in *Lujan*, he must show more than a bare desire to view and record. Currently, he has not.

In *Lujan*, a collection of environmental defense groups brought a challenge to a rule promulgated by the Secretary of the interior. 504 U.S. at 558. The Secretary had interpreted a consultation requirement in Endangered Species Act as applying only within the territorial

United States and on the high seas.[3] The environmental defense groups filed suit "seeking a declaratory judgment that the new regulation is in error as to [its] geographic scope . . . and an injunction requiring the Secretary to promulgate a new regulation restoring the initial interpretation." *Id*. at 559. These groups claimed that their "injury is that the lack of consultation with respect to certain funded activities abroad "increas[es] the rate of extinction of endangered and threatened species." *Id*. at 562 (quoting Complaint ¶ 5).

A subset of the plaintiffs' individual members submitted affidavits attesting to the harm being done to certain "animal species," which thereby reduced the likelihood the plaintiffs could later observe them. But when deposed, the plaintiffs admitted that they had no concrete plans to return to Sri Lanka to view those species. The fact that the plaintiffs only possessed an intent, but not a ticket, to return to Sri Lanka "d[id] not support a finding of the 'actual or imminent' injury that our cases require." *Id*. at 564. Similarly, here, McKay's "someday" desire to record court activities—and his reticence to because he fears what may result—are insufficient to support his claim.

In fact, McKay explains his claim's deficiency when he states that "there is clearly actual present harm or at least 'significant possibility of future harm' by Plaintiff undertaking this activity without a proper opportunity to know what is prohibited by the Electronics Ban Order itself." ECF No. 68 at 4. That is, he acknowledges that he is requesting an advisory opinion. The United States Federal Courts have never rendered such an opinion and the Article III standing

---

3    That requirement reads:

Each Federal agency shall, in consultation with and with the assistance of the Secretary [of the Interior], insure that any action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical.

16 U.S.C. § 1536(a)(2).

requirements are directed at ensuring no such opinion is ever rendered. *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) ("As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions."); *U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993) (reiterating that the case or controversy requirements of Article III ensures that federal courts to not render advisory opinions). McKay's void-for-vagueness claim in Count II reads as something between a "someday" intention to record and a concession that the Ban Order actually prohibits his proposed actions. Such is not the stuff of constitutional standing. Count II of McKay's complaint will be dismissed without prejudice.

**B.**

Next, Defendants challenge Count VI of McKay's complaint. They assert that this count, pled as a claim that the Electronic Ban Order violates the Equal Protection Clause, fails as a matter of law. As they did with respect to Count II, however, Defendants first allege that McKay does not have standing to bring his Equal Protection claim. McKay does not respond to this allegation in his response brief but instead proceeds directly to the merits of his equal protection claim.

The standing analysis for equal protection claims is indistinguishable from that set forth above. *See supra* § III.A. Likewise, the analysis of McKay's claim is indistinguishable. Even if he were to allege a "class of one" Equal Protection claim, he does not satisfy the requirements for constitutional standing. "The 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be [him]self among the injured." *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013), *reh'g and suggestion for reh'g en banc denied* (July 12, 2013) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)). In *Swanson*, the

Seventh Circuit held that a resident of a property did not have standing to bring an Equal Protection class of one claim. While she often acted as the agent of the homeowner, with whom she was cohabitating on site, it was the homeowner, not her, whom the city sued and fined for ordinance violations. Although "she may have felt frustrated by the bureaucratic run-around she encountered, the legally protected interests at issue belonged to [the homeowner]." *Id*. at 783.

More importantly for McKay, the Seventh Circuit went on to hold that "[b]ecause [she] was not the subject of any municipal citation, and was not the object of any government action, [she] has not suffered an 'injury in fact,' and has not satisfied the first element of standing." *Id*. Same with McKay. He has not been on the receiving end of any municipal action or citation. He has not suffered any allegedly irrational application of the exemption provision. He has not been injured. Absent any such allegations he does not satisfy the requirements of Article III and Count VI of his complaint will be dismissed without prejudice.

### IV.

Accordingly, it is **ORDERED** that Defendants' Second Motion for Summary Judgment, ECF No. 67, is **GRANTED**.

It is further **ORDERED** that Plaintiff McKay's Second Motion for Summary Judgment, ECF No. 68, is **DENIED**.

It is further **ORDERED** that Counts II & VI of Plaintiff McKay's First Amended Complaint, ECF No. 75, are **DISMISSED without prejudice**.[4]

It is further **ORDERED** that Plaintiff McKay's Motions for a Certificate of Appealability, ECF Nos. 53 & 54, are **DENIED as moot**.

---

[4]   Because these were the only remaining counts of McKay's First Amended Complaint that had not been dismissed, Judgment will be entered against McKay in conjunction with the issuance of this opinion.

- 13 -

Dated: April 13, 2015                          s/Thomas L. Ludington
                                               THOMAS L. LUDINGTON
                                               United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 13, 2015.

                                    s/Karri Sandusky
                                    Karri Sandusky, Acting Case Manager